Filed 2/19/15  P. v. Cheng Ca4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060420 |
| v. | (Super.Ct.No. SWF1301439) |
| VICTOR CHENG, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael B. Donner, Judge.  Affirmed.

Martin Kassman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

## INTRODUCTION[1]

After defendant Victor Cheng's Temecula home was sold in a nonjudicial foreclosure, he tried to retake possession of the property by recording a false grant deed and reoccupying the house. A jury convicted defendant of four criminal offenses: filing a fake document (§ 115); second degree burglary (§ 459); trespass (§ 602, subd. (m)); and contempt of court (§ 166, subd. (a)(4).) The court sentenced defendant to three years of felony probation and ordered him to spend 171 days in the work-release program.

On appeal, defendant argues there is insufficient evidence to prove count 2 for burglary. We disagree and affirm the judgment.

# II

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a naturalized citizen of the United States who speaks Cantonese. Defendant represented himself at trial and objected repeatedly to a "jury trial" instead of a "trial by jury," which he apparently believed were different kinds of proceedings.

Defendant and his wife, Anita Cheng, purchased the house at 45307 Saint Tisbury Street in November 2004. In June 2005, they obtained a home equity line of credit on the property in the amount of $165,000. In February 17, 2006, a second deed of trust on a home equity line of credit was recorded in an unspecified amount. A notice of default

---

[1] All statutory references are to the Penal Code.

was recorded on the property in March 2010, reflecting arrears of $14,515. A notice of trustee's sale was recorded in June 2010. In August 2010, a trustee's deed upon sale was recorded, and the ownership of the property reverted to the lender, the Preeminent Investment Corporation.

In May 2011, Samy Azmy Atta Hanna and Amira Gourgi Keroles Metyas, husband and wife, and their three grown children, Mina Samy Azmy Atta, Marian Samy Azmy Atta, and Maryam Samy Azmy Atta, all Egyptian citizens, purchased the property as joint tenants for $400,000. The Atta family purchased the house because they alternated between living in Egypt and California. The grant deed was recorded on May 13, 2011.

In August 2012, the entire family left for Egypt. In October 2012, Marian Atta called her cousin, Peter Keroles, and asked him to check on the house because the power company had informed her that the utilities had been transferred out of the family's name. The utility company told Keroles that the Atta family's account had been closed and that the account was in the new renter's name. Keroles learned the title to the property also was no longer in the Atta family's name.

On October 2, 2012, Riverside County Deputy Sheriff Bruce Pierson was dispatched to the Saint Tisbury Street house at 3:00 p.m. All of the blinds were closed and there were two "no trespassing" signs in the windows. Defendant answered the door. He told Deputy Pierson he had owned the house for 12 years but he had been "illegally foreclosed on" and that he had gone to court "fought and got his house back."

3

Defendant said he had moved back 12 days earlier in September. He handed the deputy a Riverside County envelope containing some documents, including a deed in defendant's name, recorded August 8, 2012, with the red stamp and seal of the county recorder. Defendant repeatedly stated: "'I'm owner of the house. I'm owner of the house.'"

Keroles arrived at the house and told the deputy the house was not supposed to be rented to anyone. Inside the deputy and Keroles saw some of the Atta family's furniture, as well as furniture Keroles did not recognize. Defendant said the other furniture had been moved into the garage.

Keroles examined the deed and told the deputy it was obviously fraudulent because defendant was listed as both the seller and the buyer. The deed reflected that "VICTOR CHENG AND ANITA CHENG" (in upper case letters), granted to "Victor Cheng and Anita Cheng" the property located at 45307 Saint Tisbury Street. The deed was recorded on August 9, 2012, at 12:06 p.m., and the recording fee was $72. The original documents were stamped in red as certified copies. Attached to the deed were four unconventional documents entitled "AFFIDAVIT OF STATUS," "ACKNOWLEDGEMENT OF ACCEPTANCE," "DEED OF REVOCATION," and "AFFIDAVIT OF [SECURED PROPERTY] INTEREST." The documents identified the Chengs as "Natural" not "ARTIFICIAL" persons.

Deputy Pierson consulted his watch commander who said the property seemed to be in defendant's name. Deputy Pierson was suspicious but he let defendant remain in the house. Later the deputies determined the house had been foreclosed upon in 2010 and

4

subsequently sold to the Atta family.

Deputy Pierson returned to the house and asked to see the deed again. The signatures of defendant and his wife were notarized by a Nevada notary. When asked about the deed, defendant said "he had recorded it in Riverside County and the documents were drawn up by himself." Although defendant did not say he walked into the recorder's office, he did say he had recorded the deed in the City of Temecula[2] and he had paid the recording fee to the recorder. Defendant did not say he had mailed the deed for recording.

When the Atta family returned from Egypt and finally recovered possession of the house, they obtained a restraining order against defendant. Defendant was ordered to stay away from the property on Saint Tisbury Street and from every member of the Atta family. The restraining order had been issued on October 11, 2012, and reissued on October 30, 2012.

Nevertheless, on November 5, 2012, defendant tried to serve the Attas at home with a notice to quit. After someone knocked loudly on their front door for about 10 minutes, they called the police. When Deputy Leonardo Lopez arrived at the residence, he found a piece of paper entitled "Three-Day Notice to Quit" signed by defendant and taped to the front door. Five copies of the notice were inside an envelope on the front

---

[2] The trial court took judicial notice that the county recorder has an office in Temecula.

porch.

Deputy Lopez contacted defendant who said he understood the meaning of the restraining order. Defendant admitted he signed the notice and had instructed his lawyer to serve it.

Joanna Mendelson is an investigative researcher with the Anti-Defamation League. She trains law enforcement agencies about the "Sovereign Citizen" movement. Its members believe the national government is "illegitimate" and its laws do not apply to them. They refuse to "contract" with the government. The movement is related to the "posse comitatus," a movement that only recognizes the sheriff and county laws, not state or federal law. Sovereign Citizens often file frivolous documents or lawsuits, a practice called "paper terrorism." The Sovereign Citizen movement "really capitalized on the mortgage decline." Members moved into vacant houses, changed locks, and posted deeds to themselves in the windows.

Mendelson testified that the grant deed recorded by defendant on August 9, 2012, is a typical example of the kind of documents created by Sovereign Citizens. The style used by Sovereign Citizens was exemplified by defendant transferring the property from himself to himself, using upper-case letters for his and his wife's names, and then deeding the property to their same names, using lower-case letters, as the straw man "deeding the property to the flesh and blood." Other documents created by defendant displayed Sovereign Citizen indicia.

During trial, defendant repeatedly challenged the trial court's "subject matter

6

jurisdiction." Throughout the trial, he refused to be represented by an attorney or to participate actively in the proceedings. He reiterated: "I will not participate and refuse to contract with this administrative law tribunal." Defendant filed meritless motions, interlocutory appeals, and a federal lawsuit.

III

BURGLARY

Defendant argues fairly simply that his burglary conviction must be reversed because no evidence was presented that he physically entered the county recorder's office to record the false deed he had drafted. (*Magness v. Superior Court* (2012) 54 Cal.4th 270, 277.) As an alternative, defendant speculates that he could have mailed the deed to the county recorder's office. There was no testimony to support this speculation. Instead, defendant told Deputy Pierson that he had drafted the deed himself and he had paid the fee to record it in Temecula.

In considering a claim of insufficiency of evidence, a reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Marshall* (1997) 15 Cal.4th 1, 34.) The trier of fact is entitled to draw reasonable inferences from the evidence and a reviewing court should ""'"presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."'"" (*People v. Rayford* (1994) 9 Cal.4th 1, 23, quoting *People v. Johnson*

7

(1980) 26 Cal.3d 557, 578.)  A reviewing court determines if the evidence supports the jury's findings, but a reviewing court's "opinion that the circumstances also might reasonably be reconciled with a contrary finding [should] not warrant reversal of the judgment." (*People v. Proctor* (1992) 4 Cal.4th 499, 529.)

In California, "the scope of the burglary law has been greatly expanded.  There is no requirement of a breaking; an entry alone is sufficient.  The crime is not limited to dwellings, but includes entry into a wide variety of structures. . . .

"More than a century ago, in *People v. Barry* (1892) 94 Cal. 481, this court addressed the subject of what constitutes an entry for purposes of burglary.  The defendant in *Barry* entered a grocery store during business hours and attempted to commit larceny.  This court, rejecting the contention that a burglary had not occurred because the defendant had entered lawfully as part of the public invited to enter the store, stated:  '[A] party who enters with the intention to commit a felony enters without an invitation.  He is not one of the public invited, nor is he entitled to enter.' (*Id.* at p. 483; *People v. Salemme* (1992) 2 Cal.App.4th 775, 781 [entering a residence to sell fraudulent securities is an entry within the meaning of the burglary statute].)" (*People v. Davis* (1998) 18 Cal.4th 712, 720-721.)  Mailing a fraudulent document is not a burglary. (*Id.* at p. 722.)

The trial court instructed the jurors on the crime of burglary based on CACRIM No, 1700, as follows:

8

"The defendant is charged in Count 2 with burglary in violation of Penal Code Section 459.

"To prove that the defendant is guilty of this crime, the People must prove that: One, the defendant entered a building; and two, when he entered a building, he intended to commit procuring/filing a false document or offering a false document for filing. To decide whether the defendant intended to commit procuring/filing a false document or offering a false document for filing, please refer to the separate instructions that I have given you on that crime.

"If you find the defendant guilty of burglary, it is burglary of the second degree."

The prosecutor argued: "The defendant is also charged with burglary. The elements of the burglary are that the defendant entered a building—and in this case, we're talking about the recorder's office—the County recorder's office—and when he did, he intended to commit the crime in Count 1. [¶] So basically, Count 2 is the defendant goes into the recorder's office with the intent to file and record this false document that he has been charged with in Count 1."

While there was no testimony expressly stating that defendant physically walked into the county recorder's office, there was strong circumstantial evidence that he did. The plain meaning of defendant's admissions to the deputy were that he personally recorded the false deed in Temecula and paid the fee. It is not likely he would have said to the deputy that he personally went to the recorder's office. But he did not say he mailed the deed for recording or that he hired someone else to record the deed—as he had

9

done with the notice to quit.  A reasonable inference for the jury to make is that defendant personally delivered the deed for recording.

"The test on appeal is not whether we believe the evidence established the defendant's guilt beyond a reasonable doubt, but whether ""'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"" (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13, quoting *People v. Kelly* (1990) 51 Cal.3d 931, 956, and *People v. Rich* (1988) 45 Cal.3d 1036, 1081.)  It was certainly rational for the jurors to conclude unanimously that defendant personally entered the recorder's office to record the false deed.  Accordingly, substantial evidence supports defendant's burglary conviction in count 2.

IV

DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


KING
Acting P. J.


MILLER
J.

10